We'll turn next to the campus thing, Everson's Ashcroft. Good morning. May it please the court. My name is George Reedy, appearing on behalf of petitioner Shamsher Singh. This is a petition for review of the Board of Immigration Appeals Decision, which affirms the immigration judge's decision without opinion. Therefore, we review the immigration judge's decision for substantial evidence. In this case, the threshold is that the immigration judge's decision is without opinion. The threshold issue is credibility. To support an adverse credibility finding, the adj. must provide specific and cogent reasons for doubting the petitioner's credibility. Why didn't he produce his Canadian asylum application unasked? Petitioner argues that he made every effort to obtain that information, but that he was unable to. He supplied affidavits, which are in the record, illustrating that his family members tried to obtain his file from his attorney in Canada, but that he was unable to obtain that information. It's a public record, isn't it? Well, the immigration judge speculates that he would have been able to obtain. Is it a public record? Whether it is or is not is immaterial. It seems to me there are three answers to my question. One is yes. One is no. The third one is I don't know. Which is it? I personally believe it is. You think it is a public record? Yes, Your Honor. However, the petitioner was not. Do you think it was reasonable for the immigration judge to request it? Yes, Your Honor. I believe it was. But the issue is whether or not that information was easily available in this case. There is an argument that it is easily available because it is a public record, as the Court has pointed out. However, Petitioner testified on the record that he made every effort to obtain that file through his attorney and through his own efforts, and that for whatever In what city in Canada was that application filed? I do not know that, Your Honor. Did he have relatives in that city? He provided the denial decision, which I believe, if I have to guess, I mean, I think it's British Columbia, but he submitted the denial of his Canadian immigration, of his asylum application. And, however, he did make efforts to obtain it from his attorney. He was not aware that it was a matter of public record. He asked his attorney, his trial attorney, to obtain that. His trial attorney was not able to obtain that information. And the second issue, even if it is easily available information, the issue is whether or not it is material. Granted, it's useful information, but is it material to the Petitioner's claim of asylum? It would not. I think the immigration judge even concedes in her opinion that it ordinarily does not go to prove his eligibility or deserving of asylum in her decision. Yes, but the IJ did say that it would go to the question of credibility, that is, whether Mr. Singh had been telling a consistent story to Canadian authorities as he was telling to U.S. authorities. And for that purpose, it would be very important for determining his credibility. Yes, but it would say nothing to whether or not he suffered persecution in India. It would simply be to catch him in a lie, if anything. And I think there is case law that supports that merely trying to catch a petitioner in a lie is not a sufficient basis for requiring any information. Well, the IJ here is largely relegated to deciding whether Mr. Singh is telling a true story, because Mr. Singh does not have a lot of other evidence to demonstrate persecution in India. And so if we have public records available to us in which he had told other authorities and perhaps had provided other information to Canadian authorities in connection with an asylum petition, then wouldn't that be relevant to whether Mr. Singh was a credible witness and was telling the truth in the United States? Ideally, if he could have provided it, he would have. I think Judge Hawkins' point was that he made efforts through his relatives, who talked with his attorney, who would come back and get a story that he wants money. And at that point, doesn't Mr. Singh have an obligation to make application to the Canadian government on his own without going through his attorney in Canada? Well, for whatever reason, the petitioner was not able to do that. He requested that that be done from his current attorney, from his trial attorney, that is, and that was not done. And he made every effort to do so through his family. And being that the petitioner doesn't know Enano English himself, the question is what he could have done himself to obtain that information. On behalf of the petitioner, I submit he did everything he could possibly do that could be reasonably required. Were you Mr. Singh's trial counsel here? I believe that we were, yes, Your Honor. Okay. Do you know whether your firm made any efforts to obtain these records from the Canadian government? Well, being that I haven't been with the firm since the time that we handled this case, however, I do know that we did request, and we have on record, I believe, that request from the attorney, from the petitioner's Canadian attorney. So to that extent, we did request. He used, your client used false documents to gain entry into both Canada and Greece? Well, travel documents. I have, again, can I have a yes, no, or I don't know? Yes, Your Honor. He did? Yes. So the IJ, the immigration judge, had reason to be requesting these other documentations if for no other reason to find out, for example, what his true name was? Yes, but the petitioner was up front throughout the testimony about, and the immigration judge even concedes in her opinion that, in her decision, that petitioner never withheld that information, that he testified openly and to the best of his ability regarding his past experiences, both in India and since fleeing from India. He supplied his, one of his, the names that he previously used on his asylum application, and then readily supplied that information at his hearing that he had traveled under two different names. So I submit that there was no legitimate concern based on his identity, which is the other primary. Did he list both those names in his U.S. asylum application? Regrettably, no, he did not. But yet he did readily admit and testify to that at his hearing. And so in this situation, in this case, we have two issues being identity and his Canadian file that he was not able to obtain. At this point, I would like to reserve the rest of my time and defer to the response counsel. Thank you. Ms. Rock. May it please the Court, my name is Renee Rock, and I represent the respondent, John Ashcroft. I would like to just first address some of the issues that Mr. Silva brought up. First of all, the identity issue is very important for obvious reasons, national security saying that Mr. Singh is who he is and what happened to him actually happened, and also for establishing his eligibility, whether or not he had a criminal record. Although he did admit, like, eventually that he used these false identities, at the May 2, 2001 hearing, he did amend his asylum application to include one of his names, but after the discussion, there still was no addition of the two other names, the false names he used in Greece and in Canada, until right before the judge rendered her decision on June 7. Moreover, the immigration judge explicitly stated that she did not believe Mr. Singh's testimony or suspect to his identification documents, because one of the reasons she used is that he stated that he used his matriculation documents to establish his identity in Canada in order to get his Canada Canadian driver's license and identification. However, the matriculation records that he provided, he also testified that he received them a mere three or a couple months before his American asylum hearing, that let open the question what identification did he use in Canada, and also the matriculation records don't have the same name as he has in his Canadian records. Secondly, much of his other testimony was inconsistent, and it went to the heart of his claim. For example, he said that some of his teammates were Sikh terrorists, and that they forced their way into his home, and subsequent to that, they were killed by the police, and that his 1987 arrest was because he harbored those militants. However, he also presented a picture in 1995 in which he identified one of the teammates as one of the people who he said was killed much earlier. This calls into question whether his testimony about the 1987 arrest and torture and the subsequent death of those terrorists was in fact true. Secondly, he also offered two different reasons for his September 6, 1995 arrest. The first reason was that all of the people who were suspected of having involvement with militants were like arrested after the assassination of Viant Singh. The second reason was because that he supplied later was because they were looking for his cousin who was suspected of being involved with militants. Judging from his demeanor, his testimony, the IJ noted or found that his testimony about his cousin seemed as if he made it up at the last minute, and then only later realized that it didn't fit in with the rest of his testimony. And there were other consistencies, like he said he was in hiding, and then he presents a picture of himself playing at a Kabaddi tournament and being photographed, and although he later explained that it was because he'd only played once, and that it was a village two kilometers away, he only said that after he was challenged, and it still doesn't explain why if he was in hiding that everybody in the community knew him well enough to find him, ask him to play in this tournament, and all of the other things that would be incident to the event taking place. The IJ in this case was very clear that she either did not believe Mr. Singh at certain points, or just did not know what to believe because of the inconsistency in his testimony. Therefore, she felt that his failure to provide sufficient corroboration was fatal to his claim. He provided affidavits, but they were of limited value, because the people who signed them did not speak English. The affidavits were in English, but there was no Punjabi version that was supplied in order for the judge or anyone else to know that the people who signed that affidavit actually knew what it was they were signing. He also could not properly authenticate some of these documents, because he himself did not read English, and he wasn't familiar with the signatures of all of the people who provided them. And he had no idea how these documents came to be met. With regard to the Canadian document, at the May 7, 2001 hearing, because he was having difficulty getting these documents from his attorney, he specifically promised that he could and would request these documents for the Canadian government. That hearing was continued, but at the next hearing in June, he still gave no indication that he ever made any attempt to request this information from the Canadian government. The immigration judge properly found that Mr. Singh was being disingenuous. In addition, because the immigration judge made no further findings with regard to Mr. Singh's eligibility after having decided he was not credible, if the court finds that the immigration judge's decision was not supported by substantial evidence, the court should remand the case back for further findings with respect to eligibility. In conclusion, because Mr. Singh failed to testify credibly and consistently, or to support his testimony with sufficient corroborating evidence to cure the inconsistency, the court should dismiss Mr. Singh's petition. Thank you. To the extent that the immigration judge cited inconsistencies or alleged inconsistencies in Petitioner's claim, those inconsistencies are not material to his asylum claim. Furthermore, to the extent that there are inconsistencies, the immigration judge failed to afford Petitioner an opportunity to respond to any allegations that his testimony was not credible on many points, including the point that there were two reasons for his arrest in 1995 and the fact and the allegation that his election card may not have been authentic or that is an explanation as far as to the extent of the affidavits that were provided on his behalf. Petitioner's, the core of Petitioner's claim is not disputed. His three arrests, the beatings he suffered, the fact that his brother was murdered in 1990 by the police, all of the information he provided regarding the core of his claim is not disputed. Instead, the immigration judge cited two primary concerns being identity and his failure to provide, his inability to provide his Canadian file, which we have already discussed today. Petitioner has established by his credible testimony that he suffered persecution in India. His testimony alone is sufficient to establish his claim. Any further documentation of his claim he provided, and to the extent that he did not provide, he was not able to provide additional documentation. That documentation was not easily available or material to his claim. I'd like to thank the Court and submit an honor. Thank you.
judges: Rymer, Hawkins, Bybee